UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT MICHAEL MURPHY** | **CIVIL ACTION NO.** |
| **Plaintiff** | |
| **VERSUS** | **SECTION:** |
| | **JUDGE:** |
| **FIRST AMERICAN TITLE GUARANTY COMPANY** | **DIVISION:** |
| | **MAGISTRATE:** |
| **Defendant** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Robert Michael Murphy ("Plaintiff"), and for his Complaint against Defendant, First American Title Guaranty Company f/k/a United General Title Insurance Company ("Defendant"), alleges, upon information and belief, as follows:

## PARTIES

1.

Plaintiff, Robert Michael Murphy, is an individual residing in Jefferson Parish, Louisiana.

2.

Defendant, First American Title Guaranty Company, formerly known as and the successor to United General Title Insurance Company, is an alien insurer organized and existing under the laws of Texas with its principal place of business at 1 First American Way, Santa Ana, California 92707.

1560530

## VENUE

3.

Pursuant to 28 U.S.C. §1391, venue is proper as to Defendant in this judicial district because a substantial part of the events and omissions giving rise to the claim occurred in this district and a substantial part of the property is situated in this district.

## SUBJECT MATTER JURISDICTION

4.

This Honorable Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant.

## PERSONAL JURISDICTION

5.

There is personal jurisdiction over Defendant based upon its conduct and application of the Louisiana Long Arm Statute, La. Rev. Stat. §13:3201 and federal jurisprudence.

## THE PLAINTIFF'S TITLE INSURANCE POLICY

6.

On or about April 15, 1994, Plaintiff purchased a home located at 450 Woodvine Avenue, Metairie, Louisiana 70005 (the "Insured Property").

7.

To protect against title defects with respect to the Insured Property, Plaintiff engaged Defendant's predecessor, United General Title Insurance Company ("United General"), through its authorized agent, Raoul Seré, to provide title activities on behalf of United General as part of the purchase of a policy of title insurance issued by Sere' under his authority as an issuing agent for

United General.  Exhibit A to this Complaint is true and accurate copy of Policy no. 93140683 issued by United General, through Mr. Seré, for the Insured Property ("Policy").

8.

At some time following the issuance of the Policy, Defendant, First American Title Guaranty Company, acquired the assets and attendant liabilities of United General, including the Policy referred to herein.  By virtue of its acquisition of the Policy insuring Plaintiff, First American Title Guaranty Company assumed the obligations of United General and took the Policy subject to any underwriting decisions made by Sere' as the authorized issuing agent for United General for said Policy, and as such is liable to Plaintiff for the conduct of United General through its agent Sere' in said capacity.

9.

Upon information and belief, prior to issuing the Policy, United General, through Seré, in his capacity as issuing agent, obtained and examined both a title search and a survey of the Insured Property, and issued the Policy, without specific exception or exclusion for any title defects revealed on the search and/or survey.  United General wrongly kept the standard exceptions pre-printed in the Policy, including the exception for the lack of a current survey and the "public records" exception, despite the fact that Sere' had obtained a current survey and did a public records title search.

10.

At all material times, Seré was acting as an express agent for United General, with full authority to perform title activities and bind said company with respect to the title for Insured Property.

11.

As an issuing agent for United General, Sere' had full knowledge of the 1994 survey and the public record that depicted title issues for the Insured Property, including encroachments and fence misalignments, and had an obligation to refer to the defects shown on the 1994 survey in the Policy issued to the insured Plaintiff, together with the obligation to explain the possible loss of title, either full or partial, to the insured and to provide a reasonable remedy for the defects disclosed on the survey.

12.

For reasons unknown, United General, through Sere', neither disclosed the defects shown on the 1994 survey and relevant public records as of 1994 nor explained the ramifications of the 1994 survey and relevant title search to the insured Plaintiff. Instead by issuing the Policy without specific exceptions for the defects shown on the 1994 survey and title search, Sere' on behalf of United General led Plaintiff to believe that the title to the property he was purchasing was clear, good title free of defects, without any exclusion in the Policy for any title defect on the Insured Property.

## UNITED GENERAL'S SURVEY OF THE INSURED PROPERTY BEFORE ISSUANCE OF THE POLICY

13.

United General, through its agent, procured a survey for the Insured Property so that Plaintiff could receive a policy of title insurance without exception for encroachments or other defects that could be identified on a survey examined by Mr. Seré, as agent for United General.

14.

Prior to issuing the Policy, Mr. Seré, as agent for United General, did in fact obtain a survey of the Insured Property conducted by Sterling E. Mandle, a licensed land surveyor (the "1994 Survey")..

15.

The 1994 Survey was certified and issued to Mr. Seré, as agent for United General.

16.

United General, through Mr. Seré, had actual or constructive knowledge of the contents of the 1994 Survey.

17.

At no time did United General put Plaintiff on notice of any specific encroachments or exclusions involving the Insured Property, issues involving boundaries of the insured and neighboring properties, or any other actual or potential title defect shown in the 1994 Survey.

### UNITED GENERAL'S TITLE SEARCH AND TITLE OPINION BASED ON PUBLIC RECORDS BEFORE ISSUANCE OF ITS "ALL CLEAR" POLICY

18.

United General, through Sere', conducted a review of the public records for any title defect on the Insured Property as of the time the "all clear" Policy was issued by United General. Thereafter, Sere' expressly or implicitly provided a title opinion to United General regarding the Insured Property, finding no title defect related to the public records for the Insured Property, and issued the Policy without specific exception or exclusion for any title defect on the Insured Property.

19.

Before purchasing the Insured Property and receiving the Policy, Plaintiff had no knowledge of any potential or actual title defect shown on the 1994 Survey or public records and reasonably

believed based on United General's title activities, through Sere', that United General had found that title to the Insured Property was "all clear," without title defect, encroachment or exclusion specific to the Insured Property.

20.

On April 18, 1994, United General issued the "all clear" Policy, without taking exception or exclusion for the specific defect in title identified in the 1994 Survey and public records, defects in title, rendering the standard, pre-printed exceptions unenforceable as a result of the 1994 survey and public records search by United General's agent.

21.

It was the intention of Plaintiff and, upon information and belief, United General, that the Policy be issued without title defect, exclusion or exemption for title defect specific to the Insured Property, and to expressly disclose to Plaintiff such title defects as were shown in the 1994 Survey, the title search for public record, or otherwise. Both Plaintiff, upon information and belief, Defendant understood and relied on the Policy as insuring title of the Insured Property as "all clear," good title when the Policy was issued in 1994.

## **THE TITLE DEFECT AND SALE OF THE INSURED PROPERTY**

22.

On February 7, 2020, Plaintiff entered into an agreement for the sale of the Insured Property to Res Prop NOLA, LLC ("Buyer").

23.

Defendant was also the title insurer for the Buyer of the Insured Property.

24.

Defendant's title agent, Steeg Law, had a survey done of the Insured Property on February 18, 2020 (the "2020 Survey"), along with a title search and opinion for the Insured Property. No material changes in the fences and fence posts on and public records for the Insured Property had occurred since the "all clear" Policy of title insurance had been issued by United General in 1994.

25.

In connection with the 2020 Survey, Plaintiff discovered for the first time that a fence of the owner of the neighboring property located at 460 Woodvine Avenue, Metairie, LA 70005, encroached onto the Insured Property (the "Title Defect").

26.

Based on the 2020 Survey, The Steeg Law Firm, as the issuing agent for the new policy to be issued by the Defendant, took a specific exception or exclusion for the Title Defect in a title objection letter provided to Plaintiff:

> . . . Pursuant to Section 4 of the [agreement to sell], Purchaser [through Defendant] hereby objects to the following items if not otherwise satisfied or cured by [Plaintiff] before the Closing.
> \* \* \*
> 5. Survey: Purchaser objects to the fences, fence posts, and shrubbery located inside the southern boundary line of the Property, including any adverse possession or acquisitive prescription rights that may be accruing in favor of the owners of the property adjoining the Property on the southern side by reason of the fences, fence posts, and shrubbery.

*See* Exhibit "B" to this Complaint (Letter of March 3, 2020 First American Agent). The Title Defect existed in the public records and 1994 survey when Defendant issued the "all clear" Policy to Plaintiff.

**DEFENDANT'S BAD FAITH DENIAL OF COVERAGE**

27.

On or about March 17, 2020, Plaintiff wrote to Defendant demanding that it cure the Title Defect it insured under the "all clear" Policy it issued to Plaintiff in 1994, including, without limitation, by paying for any insured losses and attorneys' fees as a result of the Title Defect dispute that arose in 2020. Attached as Exhibit "C" is a true and accurate copy of Plaintiff's March 17, 2020 claim and initial proof of loss.

28.

Defendant did not timely respond to Plaintiff's demand that Defendant cure the Title Defect as it was required to do by the Policy.

29.

Accordingly, on March 20, 2020, to mitigate his losses as required by law, Plaintiff paid the owners of the neighboring property at 460 Woodvine Avenue $85,000.00 to resolve the Title Defect dispute, by acquiring a quitclaim deed for the land in dispute, including a waiver of any claims of acquisitive prescription and requiring the removal of the encroachments depicted on the 2020 survey so that Plaintiff could sell the Insured Property to the Buyer, with good, clear title.

30.

Before the Title Defect dispute was resolved, Plaintiff also incurred a total of $11,238.01 in attorneys' fees to cure the Title Defect dispute.

31.

Had Plaintiff cancelled the agreement for the sale of the Insured Property to the Buyer during the commercial uncertainty created by the COVID-19 pandemic, he would have sustained substantial additional losses, imposing on him a duty to act promptly to cure the Title Defect so he

could sell the Insured Property to the Buyer, and deliver good, clear title as Plaintiff promised the Buyer.

32.

On April 23, 2020, Defendant denied coverage and defense to Plaintiff for $96,328.01 in losses he paid to cure the Title Defect insured under the Policy, citing Schedule B's general Exceptions 3 and 4 to the Policy, which provide that the Policy does not insure against loss or damage, which arise by reason of:

> 3. Rights or claims of parties in possession not shown by the public records.
>
> 4. Discrepancies, conflicts in boundary lines, encroachments, easements, variations in area or content, party walls and/or any facts that a correct survey and/or a physical inspection of the premises would disclose.

Attached as Exhibit "D" hereto is a true and accurate copy of Defendant's April 23, 2020 letter denying coverage to Plaintiff.

33.

On June 25, 2020, Plaintiff submitted a Supplemental Proof of Loss to Defendant by which Plaintiff provided further background and factual information supporting his claim under the Policy and requiring that Defendant reimburse Plaintiff for his insured losses. Attached as Exhibit "D" hereto is a true and accurate copy of Plaintiff's June 25, 2020 Supplemental Proof of Loss.

34.

On July 23, 2020, Defendant responded by reasserting its prior denial of Plaintiff's claim. Attached as Exhibit "E" hereto is Defendant's July 23, 2020 letter denying Plaintiff's supplemental claim and proof of loss.

## FIRST CLAIM FOR RELIEF:  BREACH OF CONTRACT

35.

Plaintiff realleges and incorporates by reference Paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.

Defendant has breached its contractual obligations under the Policy by, among other things, issuance of an "all clear" Policy, without taking specific exceptions and exclusions, despite the knowledge of defects based on the 1994 survey and public records search of which the issuing agent had knowledge before United General issued the Policy in 1994 and then denied coverage for and failed to pay the covered losses of Plaintiff in 2020.

## SECOND CLAIM FOR RELIEF:  WAIVER AND ESTOPPEL

37.

Plaintiff re-alleges and incorporates by reference Paragraphs 1-36 of this Complaint, as if fully set forth herein.

38.

After United General's agent conducted its title activities in 1994, Defendant, directly and through its agent, Mr. Seré, knowing of the Title Defect, voluntarily issued the "all clear" Policy, without specific exception or exclusion for the encroachments shown on the 1994 current survey and public records search.  Defendant thereby waived any right to assert the general exceptions and exclusions on which it relies to deny coverage to Plaintiff, based upon the knowledge of its agent imputed to Defendant or its predecessor issuing company.

10

39.

Alternatively, the conduct of Defendant, and its agent in 1994 in issuing the "all clear" Policy caused Plaintiff to justifiably rely on the "all clear" good title insured under the Policy to his detriment.  Had Defendant disclosed to Plaintiff the Title Defect it knew from the 1994 survey and public records search in 1994 (instead of in 2020), Plaintiff could have taken remedial action to cure the Title Defect, without incurring the losses he did in 2020.  Defendant is, therefore, estopped from asserting the general exceptions and exclusion on which it relies to deny coverage to Plaintiff.

40.

Defendant has waived and is estopped from asserting provisions in its Policy on which it is now relying to try to exclude or limit coverage to Plaintiff.

41.

As a direct and proximate result of its breach of contract, Defendant has failed to pay covered losses and Plaintiff has sustained damages in the amount of $96,328.01.

### THIRD CLAIM FOR RELIEF:  REFORMATION

42.

Plaintiff realleges and incorporates by reference Paragraphs 1 – 41 of this Complaint, as if fully set forth herein.

43.

Plaintiff understood that the Policy did not exclude or except coverage for the Title Defect because Defendant had taken no specific exception or exclusion in connection with its title activities and issuance of the Policy in connection with the 1994 survey of the Insured Property.

11

44.

The custom and practice in effect in 1994 for issuance of an "all clear" title insurance policy after a survey, title search and title examination, was to take a specific exception and exclusion for a title defect either disclosed in the title examination or current survey and delete the general exceptions and exclusions on which Defendant relies for its coverage and defense positions in this case. Defendant's predecessor, United General, failed to take specific exceptions for the Title Defect and delete the general survey and public record exceptions and exclusions after it had knowledge of the Title Defect. By failing to take specific exceptions or exclusions for the title defect and deleting the general survey and public records exceptions, United General affirmatively insured good, "all clear" title for the Insured Property including insuring the Title Defect. Under the circumstances, the Policy must be reformed to delete the general survey and public records exceptions.

45.

In the alternative that the Court determines the Policy does not provide coverage for the Title Defect, after United General reviewed the 1994 survey, did a search of the public records, issued an "all clear" title opinion, and an "all clear" Policy, the Policy as now interpreted by Defendant, does not reflect the agreement of the parties that Plaintiff had good title for the Insured Property, that there was no Title Defect for the Insured Property and no exclusion or encumbrance specific to the Insured Property. Defendant's interpretation of the Policy that it insured "all clear," good title for the Insured Property after Defendant's predecessor, United General, knew of the Title Defect, and that the general survey and public record exceptions apply to exclude coverage for the Title Defect it expressly insured, would lead to an absurd result not allowed under Louisiana law.

12

46.

In the further alternative that the Court determines the Policy does not provide coverage for the Title Defect, the Plaintiff is entitled to reformation of the Policy to reflect the foregoing agreement of the parties that the Policy insures the Title Defect and all insured losses by Plaintiff.

### THIRD CLAIM FOR RELIEF:  BAD FAITH

47.

Plaintiff realleges and incorporates by reference Paragraphs 1 – 46 of this Complaint, as if fully set forth herein.

48.

The Policy contained an implied covenant of good faith and fair dealing. Defendant breached this implied covenant of good faith and fair dealing and Louisiana Revised Statutes §§22:1973 and 22:1892 by, among other things:

   a. failing to properly investigate claims and respond to them in a timely manner;

   b. misleading Plaintiff;

   c. wrongfully failing and continuing to fail to pay Plaintiff for a covered loss;

   d. by the conduct of its predecessor, Defendant made material misrepresentation in 1994 that Mr. Seré was its agent for the title insurance activities, including the title search and review of the 1994 Survey for title defects, and issuance of the "all clear" Policy in 1994; and then in 2020 disavowing the Policy and its coverage of the Title Defect, the servant-agency of Mr. Seré and others acting on its behalf in the issuance of an "all clear" Policy that insures the Title Defect at issue in this suit;

   e. improperly asserting certain general exclusions, exceptions and limitations in the Policy; and

  f. Defendant's arbitrary and capricious conduct in its failure to pay Plaintiff for his losses insured under the Policy.

49.

As a direct and proximate result of Defendant's breaches of its statutory duties, including the duty of good faith and fair dealing, Plaintiff suffered damages, plus penalties and interest, together with all of Plaintiff's attorneys' fees and costs incurred in prosecuting this action to seek insurance coverage benefits wrongfully withheld by Defendant.

**WHEREFORE**, Plaintiff, Robert Michael Murphy, prays that: 1) Defendant, First American Title Guaranty Company, formerly known as United General Title Insurance Company, be duly cited to appear and answer this Complaint; 2) that after due proceedings are had herein, that judgment be rendered herein in favor of Plaintiff and against Defendant, for damages, penalties under Louisiana Revised Statutes §§22:1973 and 22:1892, reasonable attorneys' fees and costs of this action; and 3) for all other general and equitable relief that the nature of this action will allow.

                Respectfully submitted,

                **FRILOT LLC**

                */s/ Campbell E. Wallace*
                Campbell E. Wallace (La. Bar No.: 13195)
                Everett R. Fineran (La. Bar No.: 31153)
                1100 Poydras Street, Suite 3700
                New Orleans, LA  70163-3700
                Telephone: 504-599-8000
                Facsimile: 504-599-8100
                Email:  cwallace@frilot.com
                    efineran@frilot.com
                ***ATTORNEYS FOR PLAINTIFF,***
                ***ROBERT MICHAEL MURPHY***

**PLEASE SERVE:**

Defendant, First American Title Guaranty Company,
formerly known as United General Title Insurance Company
through its Agent for Service of Process:

Corporation Service Company
501 Louisiana Avenue
Baton Rouge, Louisiana 70802