**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ROBERT MURPHY**                                    **CIVIL ACTION**

**VERSUS**                                           **NO: 20-2897**

**FIRST AMERICAN TITLE**
**GUARANTY COMPANY**                                 **SECTION: "H"**

## ORDER AND REASONS

Before the Court are Defendant First American Title Guaranty Company's Motion to Dismiss (Doc. 4), and Plaintiff Robert Murphy's Motion for Partial Summary Judgment (Doc. 13). Oral Argument was held on April 21, 2021. For the following reasons, Defendant's Motion is GRANTED, and the matter is DISMISSED.

## BACKGROUND

In 1994, Plaintiff purchased a home located at 450 Woodvine Avenue, Metairie, Louisiana (the "Insured Property"). In conjunction with that purchase, Plaintiff secured title insurance from a predecessor of Defendant First American Title Guaranty Company ("the Policy"). Plaintiff alleges that a

1

survey was conducted at the time of the Policy purchase that depicted title issues for the Insured Property. Specifically, the survey showed an encroaching fence on the property. Defendant's representative, Raoul Sere, however, failed to disclose the defect to Plaintiff. Defendant's predecessor issued the Policy to Plaintiff without specific exception or exclusion for any title defect on the Insured Property.[1]

In connection with the sale of the Insured Property in 2020, a new survey was conducted during which Plaintiff discovered for the first time that a fence on a neighboring property encroached on the Insured Property. Plaintiff's neighbor claimed title to the disputed area through acquisitive prescription, and Plaintiff paid his neighbor for a quit claim deed for the encroaching strip of land and relocation of the fence. On April 23, 2020, Defendant denied coverage and defense to Plaintiff for $96,328.01 in losses he paid to his neighbor to cure the title defect. Plaintiff alleges that he is owed coverage under the Policy and brings claims for breach of contract, estoppel, reformation, and bad faith.

Defendant has moved to dismiss Plaintiff's claims, alleging that the Policy excludes coverage. Plaintiff, on the other hand, has moved for partial summary judgment holding that some of Defendant's defenses are invalid and that Defendant was in bad faith in denying coverage. Because the Court finds that Defendant's Motion to Dismiss has merit, it need not address Plaintiff's summary judgment arguments.

---

[1] United General Title Insurance Company issued the Policy and was later acquired by Defendant First American.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[2] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[4] The court need not, however, accept as true legal conclusions couched as factual allegations.[5] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[6] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[7] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[8]

## LAW AND ANALYSIS

Plaintiff brings claims for breach of contract, estoppel, reformation, and bad faith. Defendant moves for dismissal of each of these claims. The Court will consider each in turn.

---

[2] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[3] *Id.*

[4] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[5] *Iqbal*, 556 U.S. at 678.

[6] *Id.*

[7] *Lormand*, 565 F.3d at 255–57.

[8] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

3

### A.      Breach of Contract Claim

Plaintiff alleges that Defendant breached the Policy by denying him coverage for his neighbor's claim to title of a portion of his property. The Policy provides coverage for any defect or encumbrance on the title.[9] Defendant argues, however, that provisions of the Policy exclude Plaintiff's claim from coverage.

#### i.     *Acquisitive Prescription*

First, Defendant alleges that Plaintiff's claim is excluded under language in the Policy stating that it "does not insure against loss or damage . . . which arises by reason of: . . . Rights or claims of parties in possession not shown by the public records."[10] Specifically, it alleges that Plaintiff's neighbor's claim to the Insured Property arose by acquisitive prescription—or possession for a certain number of years[11]—and therefore was not shown on the public record.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[12] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[13] "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated

---

[9] Doc. 13-3.

[10] *Id.* at 19.

[11] LA. CIV. CODE art. 3446 ("Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time."); *see also* LA. CIV. CODE arts. 3473–88.

[12] Mayo v. State Farm Mut. Auto. Ins. Co., 869 So. 2d 96, 99 (La. 2004).

[13] LA. CIV. CODE art. 2046.

by its terms or so as to achieve an absurd conclusion."[14] "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[15]

Plaintiff rebuts that the 1994 survey did in fact show the boundary encroachment of a fence on the Insured Property and that Defendant knew of the encroachment. Defendant correctly points out, however, that the Policy does not cover the physical encroachment of the fence, but rather, claims to the title. Plaintiff's neighbor's claim for title arose out of his *possession* up to the encroaching fence. That possession was not shown in the public record. The exclusion expressly applies to "claims by parties in possession not shown in the public record." Accordingly, by its plain language, the Policy excludes coverage for Plaintiff's neighbor's claim to title of the Insured Property.

*ii.*     *Consent to Settle*

Further, Defendant alleges that Plaintiff's claim is excluded because he voluntarily assumed liability for his neighbor's claim without prior written consent from Defendant. The Complaint alleges that Plaintiff first gave Defendant notice of his claim on March 17, 2020, after he had reached a settlement agreement with his neighbor. Plaintiff paid the settlement amount to his neighbor just three days later. Defendant did not deny coverage until April 23, 2020. The Policy states that "[t]he Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured

---

[14] Carrier v. Reliance Ins. Co., 759 So. 2d 37, 43 (La. 2000).
[15] *Mayo*, 869 So. 2d at 99–100.

in settling any claim or suit without the prior written consent of the Company."[16] By its plain language, Plaintiff's claim is excluded under this provision as well.

"Louisiana courts have declined to enforce consent to settle and no action clauses only in certain limited situations."[17] These circumstances include situations in which "the insurer wrongfully refuses to defend its insured," wrongly denies coverage, or unjustifiably delays settlement.[18] None of these limited circumstances apply here. Indeed, the Complaint alleges that Plaintiff did not give notice of the claim to Defendant and make demand for reimbursement until after settlement had been reached.[19] Moreover, this Court has already held that coverage for Plaintiff's claim was excluded under the Policy provision excluding coverage for claims of possession not in the public record. Accordingly, coverage is likewise excluded under the consent-to-settle provision. Plaintiff's breach of contract claim is dismissed.

## B.   Estoppel/Waiver

Plaintiff next alleges that Defendant should be estopped from asserting exclusions in the Policy because it issued an "all clear" policy without specific exception despite knowledge of the title defect. Specifically, Plaintiff's Complaint alleges that Defendant's agent, Rauol Sere, conducted a survey in 1994 that showed the encroaching fence. He argues that Defendant therefore

---

[16] Doc. 13-3.

[17] New England Ins. Co. v. Barnett, 465 F. App'x 302, 307 (5th Cir. 2012).

[18] *Id.*

[19] *See* Doc. 1-5 ("The insured, in an effort to comply with his obligations as seller to deliver clear and merchantable title has reached an agreement with the neighbor . . . . Accordingly demand is made upon First American to reimburse the insured under the above reference policy for the expenses incurred in resolving this title dispute.").

knew of the title defect when it issued a Policy for merchantable title. He argues therefore that it should be estopped from denying coverage for that defect. Defendant offers several defenses to this argument.

   i.   *Peremption*

First, Defendant argues that, under Louisiana law, any claim arising out of the acts of an insurance agent are subject to a three-year peremptive period. Because Sere's acts took place in 1994, Defendant argues that the claim is perempted.

Louisiana Revised Statutes § 9:5606 states that:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Plaintiff argues that the § 9:5606 peremptive period applies only to agents in their individual capacities and not to claims of vicarious liability for an agent's actions. Plaintiff cites to *Sibley v. Blue Cross Blue Shield of Louisiana*, in which the court stated that "Louisiana Revised Statutes 9:5606 does not extend to claims against an insurer merely because those claims rely on imputing the conduct of an agent to the insurer."[20] As Defendant points out,

---

[20] 142 So. 3d 1022, 1025 (La. App. 1 Cir. 2014).

7

however, the *Sibley* court went on to say that "Louisiana Revised Statutes 9:5606's peremptive periods can arguably be extended to insurers in cases where the insurer's liability arises solely from the wrongful act of their agent toward an insured."[21] Indeed in *Halmekangas v. ANPAC Louisiana Ins. Co.*, the court held that § 9:5606 applied to a claim against an insurer when it was "derivative of those against the agent."[22]

Here, Plaintiff claims that waiver or estoppel results from Sere's knowledge of the encroachment in 1994 prior to the issuance of the Policy. Accordingly, Plaintiff's estoppel claim arises solely from the acts of Sere. Plaintiff's estoppel claim is therefore perempted.

*ii.   Consent to Settle*

Even assuming Plaintiff's estoppel claim is not perempted, however, Defendant points out that it would not be estopped from asserting the consent-to-settle exclusion that this Court found applicable above. Accordingly, Plaintiff's estoppel claim is dismissed.

## C.   Reformation

Next, Plaintiff pleads, in the alternative, that if the Policy does not provide coverage, it should be reformed to do so. Specifically, he alleges that the mutual intent of Plaintiff and Defendant was for Defendant to insure merchantable title free of any defect. Under Louisiana law, in order to reform a contract there must be mutual error or mistake.[23] The Complaint does not

---

[21] *Id.*

[22] 95 So. 3d 1192, 1196 (La. App. 4 Cir. 2012).

[23] Samuels v. State Farm Mut. Auto. Ins. Co., 939 So. 2d 1235, 1240 (La. 2006) ("As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. . . . clear and convincing evidence of mutual mistake was necessary only when a party sought to prove that

contain any allegation that Defendant intended to provide coverage for the type of title defect at issue here. Indeed, there is no allegation that Plaintiff ever requested or negotiated for such. In addition, even if the parties intended for the Policy to provided coverage for claims of possession not shown on the public record, Plaintiff's claim would still be excluded by the consent-to-settle provision.

**D.    Bad Faith**

Finally, Plaintiff alleges that Defendant acted in bad faith in denying coverage. This Court has found that Defendant had a reasonable basis for denying coverage and therefore Plaintiff cannot succeed on his bad faith claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss is GRANTED, and this matter is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 24th day of May, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

the insurer had insured a substantially different and greater risk than that expressed by the written policy.").

9